OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In an appeal centering on the issue of courtroom closure during an undercover officer’s testimony in a "buy-and-bust” case, we conclude that the record was insufficient to establish a substantial probability that the officer’s safety would be jeopardized by allowing defendant’s wife and children to remain in the courtroom. Their exclusion therefore violated defendant’s constitutional right to a public trial, requiring reversal of the Appellate Division’s order and a new trial.
 

 Defendant was arrested for allegedly selling two glassine envelopes of heroin to an undercover officer for $26 at 166th Street between Amsterdam and Edgecomb Avenues in Manhattan. Over objection, the prosecutor moved to close the courtroom during the testimony of the undercover officer.
 

 The officer testified at the ensuing
 
 Hinton
 
 hearing
 
 (People v Hinton,
 
 31 NY2d 71,
 
 cert denied
 
 410 US 911) that he presently conducted undercover buy-and-bust operations three to four times a week in the Manhattan area between 155th to 180th Streets, specifically in the location of 166th Street and Amsterdam Avenue, and that he feared for his safety should his identity be revealed. He related a story he had heard three years earlier about another undercover officer who was shot after being recognized in this neighborhood. The officer further testified that he did not work in the area of the courthouse and that he had never encountered former "buy” subjects while there to testify. He also used the regular courthouse elevator when testifying. The officer expressed no concern about defendant’s family members.
 

 The court closed the courtroom during the undercover’s testimony, specifically excluding defendant’s wife and children.
 
 *429
 
 In response to the People’s argument that defendant’s wife posed a particular danger to the officer, the court noted that there was no indication that she was involved in any way with drugs or drug dealers and that "it’s somewhat of a large leap * * * that she would of course take note of this particular officer independently[ ] and spread it around the neighborhood.”
 

 The court nevertheless excluded defendant’s wife, based on the prosecutor’s earlier report that a court reporter claimed to have seen her speaking to a prospective juror during voir dire. Defense counsel had previously explained that the juror had already been excused, and that defendant’s wife had merely responded to a request for the time. The court did not make any inquiry of defendant’s wife, the juror or the court reporter. As for defendant’s children, the trial court concluded that they should be excluded from the courtroom "simply because they are children, and don’t understand the concept of confidentiality.”
 

 Defendant was convicted of criminal possession and criminal sale of a controlled substance in the third degrees, and the Appellate Division affirmed. In upholding the exclusion of defendant’s family, the court noted that the site of defendant’s arrest was 12 blocks from his residence, and because defendant’s relatives resided in the very neighborhood where the officer worked undercover, it was proper to bar them from the courtroom. The court further concluded that defendant’s wife had "demonstrated both a lack of good judgment and a willingness to disobey judicial directives.” (232 AD2d 305, 306.) We now reverse.
 

 While a defendant’s Sixth Amendment right to a public trial may give way to other rights or interests, the Supreme Court of the United States and this Court have repeatedly cautioned that trial courts should exercise their discretionary power to exclude members of the public sparingly and only after balancing the competing interests "with special care”
 
 (Waller v Georgia,
 
 467 US 39, 45;
 
 People v Kin Kan,
 
 78 NY2d 54, 57,
 
 rearg denied 78
 
 NY2d 1008;
 
 see also, People v Ramos,
 
 90 NY2d 490 [decided today]). Before a courtroom may be closed, the party seeking closure must advance an overriding interest that is likely to be prejudiced, closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the courtroom and it must make findings adequate to support the closure
 
 (Waller v Georgia,
 
 467 US at 48,
 
 supra; People v Martinez,
 
 82 NY2d 436, 442).
 

 
 *430
 
 In
 
 People v Martinez
 
 (82 NY2d at 444,
 
 supra),
 
 also a buy-and-bust case, we held that the trial court, before closing the courtroom, was not obligated to ask a defendant to identify any family members who would like to attend the trial
 
 (see also, People v Ramos,
 
 90 NY2d 490,
 
 supra
 
 [trial court not obligated
 
 sua sponte
 
 to suggest reasonable alternatives to closure]). We noted there, however, that "[t]here had been no unidentified spectators in the courtroom from the time the trial started, and defendant made no mention of particular friends or family he wished to have in attendance”
 
 (People v Martinez, supra,
 
 at 444). Where, by contrast, the trial court is aware that the defendant’s relatives have been attending the proceedings or that the defendant would like to have certain family members present, exclusion of those individuals must be necessary to protect the interest advanced by the People in support of closure
 
 (see, Vidal v Williams,
 
 31 F3d 67, 69 [2d Cir 1994],
 
 cert denied
 
 513 US 1102;
 
 People v Gutierez,
 
 86 NY2d 817;
 
 People v Kin Kan,
 
 78 NY2d 54, supra;
 
 see also, In re Oliver,
 
 333 US 257, 271-272 [acknowledging a special concern for guaranteeing the attendance of the accused’s family members]). Furthermore, the trial court’s reasons for excluding the defendant’s family must be "demonstrated and documented” in the record
 
 (People v Kin Kan,
 
 78 NY2d at 57).
 

 In
 
 People v Gutierez
 
 (86 NY2d at 818,
 
 supra),
 
 for example, the undercover officer testified that he feared that his life and ongoing buy-and-bust investigations would be jeopardized by open-court testimony. This Court nevertheless held that it was error for the Trial Judge to exclude the defendant’s family members from the courtroom during the officer’s testimony, since he "never claimed to hold those fears with respect to defendant’s wife and children and did not otherwise advance any valid ground for excluding defendant’s family”
 
 (id.).
 
 Under the circumstances, the closure order was broader than necessary.
 

 While the trial court may have been justified in excluding the general public from the courtroom during the officer’s testimony
 
 (see, People v Ramos,
 
 90 NY2d 490, supra;
 
 People v Martinez,
 
 82 NY2d 436,
 
 supra),
 
 it was error to exclude defendant’s family members. As in
 
 Gutierez,
 
 the undercover officer here expressed no trepidation about testifying before defendant’s wife and children. Indeed, the officer never even mentioned defendant’s family.
 

 Nor does the record contain any other valid ground for their exclusion. The mere allegation that defendant’s wife had a
 
 *431
 
 brief conversation with a prospective juror certainly did not establish that she was inclined to harm a police officer. To the contrary, the trial court itself found no suggestion that defendant’s wife was involved in the sale of drugs and, furthermore, that the likelihood that she would reveal the officer’s true identity was remote. The trial court, moreover, made no attempt to determine the substance of the purported conversation or whether, as counsel claimed, the juror had already been excused. The record therefore does not support the Appellate Division’s conclusion that defendant’s wife had demonstrated a willingness to disobey judicial directives.
 

 Based on its own conclusory generalizations about the inability of children to maintain confidentiality, the trial court also excluded defendant’s children from the courtroom. It did so, however, without adducing any facts as to the ability of the children to preserve the witness’ identity. No inquiry was made of either the children or their parents. Indeed, the record does not even reveal whether they were toddlers or teenagers.
 

 Because the record here was insufficient to establish a "substantial probability” that the officer’s safety would be jeopardized by the presence of defendant’s wife and children during his testimony
 
 (see, Press-Enterprise Co. v Superior Ct.,
 
 478 US 1, 14;
 
 People v Ramos,
 
 90 NY2d 490,
 
 supra),
 
 the closure order was broader than necessary to protect the People’s interest. We note in this regard that the area of defendant’s residence was not discussed at the
 
 Hinton
 
 hearing and did not form any part of the trial court’s decision to order closure. Therefore, the Appellate Division’s reliance on the fact that defendant’s family lived within 12 blocks of the officer’s area of operations to justify exclusion retroactively was improper
 
 (see, Waller v Georgia,
 
 467 US at 48,
 
 supra
 
 [trial court must make factual findings adequate to support the closure];
 
 see also, People v Kin Kan,
 
 78 NY2d at 59,
 
 supra).
 

 *
 

 Because reversal is mandated on this ground alone, we do not address defendant’s remaining claims.
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 
 *432
 
 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 The Appellate Division also deemed defendant’s claim as to the exclusion of his children, in particular, unpreserved for appellate review. After defendant objected to the People’s application to close the courtroom, however, the trial court expressly considered allowing the children to remain present and specifically rejected that possibility. The court was thus unquestionably apprised of defendant’s wish to have his children attend the proceedings.